UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

TIMOTHY WAYNE HOLLOWAY,

        Plaintiff,

v.                                               ACTION NO. 4:10cv93

PAGAN RIVER DOCKSIDE SEAFOOD, INC. and
JOSEPH L. MELZER, Jr.,

        Defendants.

## OPINION & ORDER

The Court sat for a bench trial on October 31, 2012 in Newport News, Virginia. Plaintiff, Timothy Wayne Holloway, was represented by Kevin Shea, Esq., and Defendants, Pagan River Dockside Seafood, Inc., and Joseph L. Melzer, Jr., were represented by Richard Bennett, Esq. Plaintiff and Defendants both presented their cases-in-chief and presented argument to the Court. For the reasons, stated below, the Court FINDS for Defendants.

## I. FINDINGS OF FACT

A. Preliminary Facts:

1. Plaintiff was injured on December 8, 2009, at the facility of Pagan River Dockside Seafood, Inc., (PRDS) located in Battery Park, Virginia.

2. Defendant Joseph L. Melzer, Jr. is the sole shareholder and chief officer of PRDS.

3. Over the course of five years, Plaintiff did a variety of jobs for Defendants, including crabbing, dredging oysters, shucking oysters and working on the docks.

4. When Plaintiff crabbed for Defendants, Plaintiff used one of Defendants' crabbing

licenses, used Defendants' twenty-four foot Carolina Skiff, and the Defendants' paid for the Skiff's gas.

5. During the summer, when Plaintiff crabbed for the Defendants, Plaintiff was paid a daily salary of $110.

6. When Plaintiff tonged oysters for Defendants, he used Defendants' boat, but Plaintiff paid for gas and expenses for the boat and used his own tongs and equipment. Defendants paid Plaintiff the market price for each bushel of oysters he brought in.

7. On rare occasions, Plaintiff asked to shuck oysters for additional money. Defendants paid Plaintiff twelve dollars per bushel shucked. Aside from these rare occasions, Defendant Melzer testified that Plaintiff worked on the water.

8. As a waterman, Plaintiff had the ability to decide when he would work. Additionally, he had control over the decision of where he would dredge for oysters and where he would crab. He only sold his product to Defendants.

9. Plaintiff primarily worked on the water as a waterman and occasionally worked on land, shucking oysters or doing other land-based work.

10. Defendants paid Plaintiff out of a general vendor account maintained by PRDC.

11. Defendants never took taxes out of Plaintiff's pay. Defendants did withhold taxes from those persons considered employees, including Defendant Melzer.[1]

12. Defendants did not consider Plaintiff an employee, but instead an independent

---

[1] Plaintiff testified that he had been told that taxes were withheld. This testimony was undermined when Plaintiff admitted he had not filed a tax return and knew that if in fact taxes were being withheld, he could receive a refund.

waterman.[2]

13. Defendants did expect for Plaintiff to sell his product to Defendants because Plaintiff was using Defendants' boat.

14. Plaintiff qualifies as a seaman under the Jones Act.

15. Plaintiff was not an employee of Defendants.

B. Day of Incident Facts:

16. On December 8, 2009, Plaintiff decided not to dredge oysters because of the weather conditions. Instead, Plaintiff asked to shuck oysters and Defendant Melzer agreed to pay him for shucking oysters.

17. While Plaintiff was shucking oysters, Defendant Melzer asked Plaintiff to help unload one of the incoming boats.

18. Mr. Michael Pittman was helping Defendants on the dock that day. When Plaintiff was sent outside to help unload the boat, Mr. Pittman saw that Plaintiff was visibly upset and Plaintiff told him it was because he could make more money if he were inside shucking oysters. Shortly thereafter, a boat came into dock and Plaintiff stepped on the boat, where Mr. Pittman and Mr. James Firman saw him take a couple of swigs of alcohol from a liquor bottle.[3]

---

[2] Plaintiff made a number of assertions for why he felt he was an employee. Plaintiff testified that Defendant Melzer and his son told him where to tong oysters and whether Plaintiff was to tong oysters or work on the docks that day. This was contradicted by testimony from Defendant Melzer and from Plaintiff's failure to identify any entries from his accounting notebook (Pl.'s Ex. 3) for when he was paid for hourly work on the dock. It should be noted that the Court's independent review of the notebook found some entries that could indicate hourly pay, but it was not established at trial whether that pay was at the direction of the Defendants or the request of the Plaintiff. Based on the contradictions and lack of evidence, the Court finds the Plaintiff's testimony to be not credible.

[3] Plaintiff testified that he did not get into the boat and did not drink the alcohol. Plaintiff alleged that he only sat on the side of the boat and that although he took the bottle and put it to his lips, he did not actually drink any alcohol because he was driving that day. Based on the Court's impression at trial and the contradictory testimony from Mr. Pittman and Mr. Firman, the Court finds that Plaintiff testimony on this issue is not credible.

3

19. After being sent back inside, Plaintiff went to move a conveyor belt machine owned by Defendants. (See Defense Exhibits 7-9 for pictures of conveyor belt).

20. When Plaintiff moved the conveyer belt, his small finger on his left hand was pinched between the wall and the machine, injuring his finger.

21. The conveyer belt had wheels on it and it was moved regularly. Defendants have had the same machine for twenty years and it has worked properly and continues to work properly. Plaintiff's injury is the only injury sustained on this machine to date.

22. Plaintiff was familiar with the machine and had used it and moved it in the past.

23. Plaintiff was the only person moving the conveyor belt at the time of the injury.[4]

24. When Plaintiff injured his finger, he went to Defendant Melzer. Defendant Melzer confronted Plaintiff and said that this would not have happened if Plaintiff had not been drinking.

25. Plaintiff then drove himself home, where his wife insisted he call an ambulance.

26. When Plaintiff arrived at the Emergency Room, medical staff indicated on his records that he was intoxicated.[5]

27. Plaintiff indicated to medical staff at the Riverside Emergency Room that he was "self employed," as reflected on his Emergency Room Registration. Def. Ex. 11.

---

[4] Plaintiff alleged at trial that the floor must have been wet or that ice must have been on the floor when he moved the conveyor belt because it moved quickly. Plaintiff provided no evidence to support his assertion; therefore, the Court finds this testimony to be not credible.

[5] At trial, Plaintiff explained this intoxication at the hospital by saying that after he went home following the incident, but before going to the hospital, he "pounded" two to three beers. This testimony, however, contradicts Plaintiff's deposition. At the deposition, Plaintiff testified that he had not been drinking at all that day. At trial, Plaintiff explained this discrepancy by testifying that after his deposition, his wife informed him that he came home and pounded two to three beers before going to the hospital. Plaintiff's wife, however, testified on cross-examination that she did not remember how many beers he drank, only that he went to the refrigerator upon coming home. She also told medical staff at the hospital that Plaintiff had not been drinking. Based on these discrepancies and lack of evidentiary support, the Court finds the Plaintiff testimony on this issue to be not credible.

## II. ANALYSIS

This case presents three issues that the Court must decide. The first two issues, whether Plaintiff was a seaman at the time of his injury, and whether Plaintiff was an employee of Defendants at the time of his injury are threshold issues that Plaintiff must prove to sustain a Jones Act case. 46 U.S.C.A. § 30104 (West 2012). The third question is whether Defendants were negligent in causing Plaintiff's injury.

### A. JONES ACT THRESHOLD REQUIREMENTS

To bring a Jones Act claim, the plaintiff must (1) be a seaman and (2) must have an employee-employer relationship with the defendant. 46 U.S.C.A. § 30104 (West 2012) ("A *seaman* injured in the course of *employment* . . . may elect to bring a civil action at law . . . against the *employer*." (emphasis added)). The Court will first examine the seaman issue and then move on to the employee-employer issue.

*(1) Seaman Status*

To determine whether a plaintiff qualifies as a seaman, the Supreme Court has enumerated a two-part test. An employee is considered to have seaman status if (1) the person's "duties [] contribute to the function of the vessel or to the accomplishment of its mission" and (2) the person has "a substantial connection to a vessel in navigation . . . that is substantial in terms of both its duration and nature." Chandris, Inc. v. Latsis, 515 U.S. 347, 368 (1995) (internal citations omitted).

Whether a person qualifies as a seaman is a status-based finding, meaning that seamen are protected "whenever they are injured in the *service of a vessel*, regardless of whether the injury occurs on or off the ship." Id. at 360 (emphasis added). Further, the Supreme Court directs courts

to examine the overall nature of the employee's work to determine seaman status, rather than just using a "snapshot test," which is looking only at the incident of injury. See id. at 363. To put it another way, "[l]and-based maritime workers do not become seaman because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protections when the course of their service to a vessel takes them ashore." Id. at 361.

The Court finds that a number of facts weigh in favor of finding that the overall nature of the plaintiff's work qualifies him as a seaman. Very simply the plaintiff demonstrated that his work required he spend a great majority of his time on the water, either dredging oysters or crabbing. In contrast, he spent only a small amount of time working on land, either shucking oysters or working on the docks. Defendant Melzer testified that Plaintiff shucked oysters for the defendants on only rare occasions, and otherwise, he worked on the water. This shows that Plaintiff had a "substantial connection to a vessel in navigation," namely the Carolina Skiff that he used to go crabbing and tong oysters. See id. at 368.

Although Plaintiff was injured on land when he was shucking oysters, his overall work on the water outweighs. Following the Supreme Court's guidance from Chandris, Inc., this Court must examine the overall nature of Plaintiff's work. See id. at 363. Given the fact that Plaintiff spent a majority of his time on the water, either dredging oysters or crabbing, and only worked on land on rare occasions, the overall nature of Plaintiff works indicates that he is a seaman. As the Supreme Court directs, a seaman "may not oscillate back and forth between Jones Act coverage and other remedies depending on the activity in which the worker was engaged while injured." Id. Because the overall nature of Plaintiff's work is that of a seaman, he holds that status. Therefore, the Court FINDS that Plaintiff is a seaman in the context of this case.

*(2) Employer-Employee Relationship*

The second issue the Court must decide is whether Plaintiff was an employee of Defendants. This issue is a question of fact to be determined by the fact-finder. See Wheatley v. Gladden, 660 F.2d 1024, 1026 (4th Cir. 1981). The Court FINDS based on the reasons stated, that Plaintiff was not an employee of Defendants. Therefore, Plaintiff cannot sustain a Jones Act claim against Defendants.

Whether an employer-employee relationship exists in Jones Act cases "must be determined under maritime law . . . and the burden of proof is on the seaman." Id. (internal citations omitted). The Fourth Circuit enumerated a number of factors for the fact-finder to consider when determining if an employer-employee relationship exists. See id. These include: "the degree of control exercised over the details of the operation, the amount of supervision, the amount of investment in the operation, the method of payment and the parties understanding of the relationship." Id. Although the list of factors is non-exhaustive, applying the facts of this case to the factors listed leads the Court to find that Plaintiff was not an employee of Defendants.

The first two factors, the degree of control exercised and the amount of supervision, require similar analysis, and both factors weigh in favor of Defendants. Based on the evidence presented, Defendants did not exercise the type of control or supervision over Plaintiff that an employer would exercise over an employee. For example, Plaintiff was not beholden to a work schedule set by Defendants and could decide when to work. Further, at the time of the incident, Plaintiff was free to decide when he would dredge oysters and where he would go to dredge oysters. Plaintiff did have requirements placed on him as to the size of oysters he dredged, but those requirements applied to all watermen and came from the Virginia Marine Resources Commission, not from

Defendants.

It should be noted that Plaintiff did sell his entire product to Defendants. At trial, Defendant Mezler testified that he hoped that Plaintiff would not sell to other buyers because Defendants let Plaintiff use their boat. This, however, was a practice, not a requirement. Further, Defendant Melzer testified that although Plaintiff used Defendants Skiff, they did not receive a discount, but paid the same market rate Plaintiff would have received from other buyers.

At trial, Plaintiff produced no evidence that Defendants controlled or supervised Plaintiff in the way an employer would control an employee. Plaintiff did testify that he was instructed by Defendants on where to dredge for oysters on a particular day and whether he was to work on the docks or on the water that day. This testimony was contradicted by other parts of Plaintiff's testimony and by Defendant Melzer's testimony. Defendant Melzer testified that Plaintiff's work schedule was determined by Plaintiff and that Defendants did not tell Plaintiff where to dredge or crab. Plaintiff contradicted himself and testified that he had the power to decide when the weather was too bad to go on the water. Finally, both Defendant Melzer and Plaintiff agreed that Defendants did not direct whether Plaintiff worked on the dock, shucked oysters, or worked on the water. Instead, Plaintiff decided what work to do, and on the day of the incident, he asked if he could shuck oysters. The Court finds that Plaintiff was free to choose when to work and how to accomplish that work, which demonstrates that Defendants neither controlled nor supervised Plaintiff in the way an employer would. Therefore, these first two factors weigh in favor of finding no employment relationship exists.

The third factor, Defendants' amount of investment in the operation, however, weighs in favor of finding an employer-employee relationship exists. In this case, Plaintiff used the

Defendants' Skiff to do his dredging and crabbing. Further, during the crabbing season, Defendants paid for the Skiff's gas. During dredging season, however, Plaintiff paid for the boat's gas. Allowing Plaintiff to use their boat displays that Defendants did have a substantial investment in Plaintiff's work, and therefore, this factor weighs in favor of finding an employment relationship existed.

The fourth factor, the method of payment, again weighs against finding an employment relationship existed. Generally, an employee is paid wages based on time and an independent contractor is paid a lump sum for each task. See Ross v. Schneider, 181 Va. 931, 940 (1943) (internal citations omitted). The facts showed that the method of payment varied depending on what work the plaintiff did. During crabbing season, Plaintiff was paid $110 for each day he crabbed. During oyster season, Plaintiff was paid for each bushel of oysters dredged at the market rate and when he shucked oysters, he was paid twelve dollars for each bushel shucked. This presents a mixed situation for the Court, where part of the year Plaintiff was paid like an employee for a day's work, and part of the year he was paid like an independent contractor.

What did not change, regardless of the season, is the fact that Plaintiff never had any taxes withheld by Defendants and was never issued a W-2 or 1099 tax form. Generally, if a person is an independent contract, rather than an employee, taxes are not withheld and tax forms are not issued. See Intermodal Services, Inc. v. Smith, 234 Va. 596, 602 (1988) (discussing how a plaintiff deemed to be an independent contractor "was never asked by the corporate defendant to complete any forms for payroll deductions" and "[n]o deductions were made from his compensation"). Although Plaintiff was paid in both wages and for tasks completed, the Court finds that the method of payment in this case is akin to an independent contractor because Defendants did not withhold

taxes and did not issue Plaintiff a tax form. Based on this finding, this factor weighs against finding an employment relationship exists.

The final factor, the parties' understanding of the relationship, also weights in favor of finding that no employment relationship exists. Plaintiff failed to prove that he understood the relationship to be that of an employer-employee. He testified that he was under the control of Defendants in that they told him what types of oysters were needed and that Defendants would tell him if he was to go out on the water that day or work on shore. Similarly, he testified that he believed that taxes where being taken out of his pay because he said he was told that by Defendant Melzer's son. On the other hand, he never filed a tax return, although he admitted that he knew he could get a refund if taxes were in fact being withheld. This admission casts doubt on his words that he believed taxes were being withheld and harmed the credibility of his testimony. The best evidence before the Court of the Plaintiff's understanding of his relationship to Defendants on the day of the incident is that he indicated to emergency room staff that he was "self-employed" when he checked-in at the emergency room. Def. Ex. 11. Although Plaintiff asserts he understood his relationship with Defendants to be an employment relationship, his actions, both with regards to his taxes and his statement on his admissions form, demonstrate he acted as if he was not an employee.

Defendants' understanding is clearer. Defendant Melzer testified that he treated watermen, like Plaintiff, as independent contractors and understood the relationship between his company and watermen to not be an employment relationship. In support of that statement, he testified that Defendants did not withhold taxes or issue W-2's to watermen, including Plaintiff. On the other hand, Defendants did withhold taxes from those people it considered to be employees,

including Defendant Melzer. This provides support for Defendant Melzer's testimony that Defendants perceived the relationship with Plaintiff to be an independent contractor relationship, not an employment relationship.

The five factors listed in <u>Wheatley</u> provide helpful guideposts for the Court in determining if an employment relationship existed. Four of the five factors weigh in favor of Defendants and finding no employer-employee relationship existed. The single factor, the amount of the defendants' investment, that weighs in favor of finding an employment relationship does not outweigh the strength of the other four factors. No single fact or factor is decisive for the Court's finding. Instead it was the accumulation of all of the facts discussed that leads the Court to FIND that Plaintiff was not an employee of Defendants for purposes of the Jones Act.[6]

Additionally, the burden to prove that an employer-employee relationship exists rests with Plaintiff. See <u>Wheatley</u>, 660 F.2d at 1026. Plaintiff failed to put forward any evidence that Defendants' supervised and controlled his operation, paid him in a way that indicated he was an employee, or viewed him as an employee. In light of this, the Court FINDS Plaintiff failed to carry his burden in this case.

Because the Court finds that Plaintiff was not an employee of Defendants at the time of his

---

[6] A number of courts have addressed whether an employer-employee relationship can be proved or disproved by a single fact. In <u>Cosmopolitan Shipping Co. v. McAllister</u>, the Supreme Court held that "[s]uch words as employer, agent, independent contractor are not decisive. No single phrase can be said to determine the employer." 337 U.S. 783, 795 (1949). The Court went onto instruct that "[o]ne must look at the venture as a whole" to determine the relationship. *Id.* Similarly, the Fifth Circuit held that the fact a sailor was not on the defendant company's payroll and did not have taxes withheld by the defendant company was insufficient to declare that the sailor was not an employee and overturn a jury's finding to the contrary. <u>Southern Shell Fish Co. v. Plaisance</u>, 196 F.2d 312, 313 (5th Cir. 1952). The Third Circuit likewise held that a plaintiff's "tax treatment of his earnings as a pilot is relevant evidence of his employment status, but it is not determinative of the degree of control the shipowner could exercise over him." <u>Evans v. United Arab Shipping Co. S.A.G.</u>, 4 F.3d 207, 217 (3rd Cir. 1993). With these cases in mind, the Court followed the Supreme Court's instruction that a fact-finder "must look at the venture as a whole" when determining whether an employment relationship existed. <u>Cosmopolitan Shipping Co.</u>, 337 U.S. at 795. No single fact was necessarily sufficient to establish that no employment relationship existed in this case, but the host of facts and factors when taken together show that Plaintiff failed to meet his burden and that no employment relationship existed.

injury, Plaintiff cannot sustain a Jones Act claim against Defendants.

## B. NEGLIGENCE

The Court need not address the issue of negligence because Plaintiff failed to prove that he was an employee of Defendants, and therefore cannot sustain an Jones Act claim. However, assuming arguendo that the Plaintiff had proven the threshold issues, the Court FINDS that Plaintiff failed to prove any negligence by Defendants, and further finds that Plaintiff was one-hundred percent negligent.

In a Jones Act action, the plaintiff holds the burden to prove negligence by a preponderance of the evidence. Negligence is defined as a failure to use the same degree of care which a person of ordinary prudence would use in similar circumstances. See e.g., Gallick v. Balt. & O. R. Co., 372 U.S. 108, 118 (1963); Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 328 (1960).

Additionally, because the case is brought under the Jones Act, comparative negligence, rather than contributory negligence, applies. Thompson v. Vane Lines Bunkering, 15 Fed. App'x 77, 79 (4th Cir. 2001) (noting that in maritime law cases, comparative negligence applies rather than Virginia's contributory negligence rule). Nevertheless, the Court finds that Plaintiff failed to meet its burden and show that Defendants were culpable at all. Further, the evidence shows that Plaintiff was one-hundred percent at fault for his injury.

Plaintiff alleged at trial that the area where the conveyor belt was placed in the Defendant's building was unsafe, but failed to provide any evidence to support that claim. Plaintiff simply alleged that the floor must have been wet or the floor must have been icy because the conveyer belt moved quickly that day. This testimony was merely a conclusion without factual support. Beyond this, Plaintiff offered no evidence that Defendants were somehow negligent in the care,

maintenance, installation, or use of the conveyer belt. The lack of evidence leads the Court to conclude that Plaintiff failed to meet his burden to prove negligence or to prove that the work conditions were unsafe.

Even if the Court had found that Defendants were negligent, Defendants proved that Plaintiff was negligent because he had been drinking on the day of the incident and was agitated at the time of the incident. To prove Plaintiff's negligence, a defendant must prove by a preponderance of the evidence that the plaintiff failed to exercise ordinary care, and that such failure played a part in bringing about his injuries. See e.g., Boudreaux v. United States, 280 F.3d 461, 466 (5th Cir. 2002); Joyce v. Atlantic Richfield Co., 651 F.2d 676, 681-683 (10th Cir. 1981); Tolar v. Kinsman Marine Transit Co., 618 F.2d 1193, 1195 (6th Cir. 1980); see also Smith v. United States, 336 F.2d 165, 168 (4th Cir. 1964) (finding that mere knowledge of a dangerous situation was insufficient to find negligence on the part of a plaintiff).

At trial, Mr. Pittman testified that when Plaintiff was sent out to the docks to help unload an incoming boat, Plaintiff was clearly agitated and upset. In his testimony, Plaintiff confirmed that fact. Later, Mr. Pittman and Mr. Firman saw Plaintiff get into the boat and take a drink or two of liquor.

Plaintiff disputes the testimony that he took a drink or drinks of the liquor. Plaintiff contends that he did not get into the boat, but instead sat on the edge and that he did not drink the liquor, but instead started to take a drink and stopped. The Court finds that based on the testimony at trial, Plaintiff's testimony is not credible as to the issue of whether he drank in the boat. This combined with Mr. Pittman and Mr. Firman's testimony leads the Court to find that Plaintiff was drinking on the day of the incident.

13

Further, medical staff, who cared for Plaintiff after the incident, noted in his medical records that Plaintiff was intoxicated when he arrived at the hospital on the day of the incident. Plaintiff explained this by testifying that he "pounded" two to three beers after being injured when he got home, but before he went to the hospital. This testimony contradicts the plaintiff's deposition. At the deposition, Plaintiff testified that he had not been drinking at all that day. At trial, Plaintiff testified that after his deposition, his wife reminded him that he came home and pounded two to three beers before going to the hospital. Plaintiff's wife, however, on cross-examination testified that she did not remember how many beers he drank, only that he went to the refrigerator upon coming home.

Based on the testimony of Mr. Pittman and Mr. Firman, the Court finds that Plaintiff drank while on the job. The Court does not find credible Plaintiff's testimony that he pounded two to three beers upon coming home, because that testimony contradicts his deposition, and his wife was not able to verify that he did drink multiple beers. Therefore, the Court FINDS that Plaintiff was intoxicated at the hospital and was intoxicated at the time of the incident.

Additionally, the Court finds, based on Mr. Pittman's testimony, and Plaintiff's corroboration, that Plaintiff was agitated and upset while working. The combination of drinking and agitation impacted Plaintiff's decision-making at the time of the incident and caused the injuries. These facts lead the Court to find that Defendants' proved by a preponderance of the evidence that the plaintiff's drinking and agitation led to Plaintiff's failure to exercise ordinary care, and that failure was the sole cause of Plaintiff's injuries.

Because the Jones Act sets up a comparative negligence regime, when the defense proves that the plaintiff committed negligence, the fact-finder must determine a percentage that the

plaintiff was a fault. Based on the Court's finding that Defendants were not negligent in this case and Plaintiff was negligent, the Court finds that Plaintiff was one-hundred percent at fault for his injuries.

### III. CONCLUSION

For the foregoing reasons, the Court FINDS that although Plaintiff qualifies as a seaman, he was not an employee of Defendants, and therefore, cannot sustain a Jones Act claim. Additionally, the Court finds had Plaintiff proved that he was an employee, Plaintiff failed to prove any negligence on the part of Defendants and the evidence showed that Plaintiff's own negligence was the sole cause of his injury.

The Clerk is directed to enter judgment for Defendants[7] and to mail a copy of this opinion and order to all parties and counsel of record.

/s/
Tommy E. Miller
United States Magistrate Judge

Norfolk, Virginia
December 18, 2012

---

[7] At the proper times, Defendants' moved for a directed verdict. The Court did not reach a decision on that motion, and based on the Court finding for Defendants on all issues, that motion is now moot.